UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
In re:                              )          Chapter 11

                                  )

        33 Mako, LLC,                )          Case No. 25-11256 (PB)

                                  )

               Debtor.                )          **FOR PUBLICATION**
-------------------------------------------------------------x

## BENCH DECISION DENYING DEBTOR'S MOTION TO DISALLOW OR REDUCE CLAIM FOR POST-PETITION DEFAULT INTEREST[1]

**APPEARANCES:**

KUCKER MARINO WINIARSKY & BITTENS
*Counsel for the Debtor*
747 Third Avenue
New York, NY 10017
By: Joel Shafferman, Esq.

BRONSON LAW OFFICES, P.C.
*Counsel for 54 SCL Funding LLC*
480 Mamaroneck Avenue
Harrison, NY 10528
By: H. Bruce Bronson, Esq.

ABRAMS GARFINKEL MARGOLIS BERGSON, LLP
*Counsel for 54 SCL Funding LLC*
1430 Broadway, 8th Floor
New York, NY 10018
By: James E. Cantanno, Esq.
     Robert J. Teitelbaum, Esq.

**Hon. Philip Bentley**
**U.S. Bankruptcy Judge**

---

[1] This decision was dictated on the record at the March 20, 2026 hearing in this case. It has been edited to clean up the transcript, to improve the readability and structure of the argument, and to add legal citations, but the substance of the ruling has not materially changed. Given the decision's origins as a bench ruling, it has a more conversational tone than a memorandum decision.

Before the Court is the objection of 33 Mako, LLC (the "Debtor") to the secured claim of its lender, 54 SCL Funding LLC ("SCL"), pursuant to sections 502 and 506 of the Bankruptcy Code. It is undisputed that SCL is over-secured and therefore entitled to postpetition interest. The only questions are at what rate such interest should be awarded and what fees and other charges should be awarded.

The Debtor has objected to SCL's claim on a number of grounds, many of which I've already ruled on. In this ruling, I will address only the Debtor's objection to SCL's claim for postpetition default interest and a late charge. For the reasons I'll explain shortly, I find that SCL is entitled to an award of postpetition default interest at the contractually agreed rate, but that it is not entitled to a late charge.

### FACTUAL AND LEGAL BACKGROUND

Let me start with some brief factual and procedural background. The Debtor in this case is a New York limited liability company that operates as a single-asset real estate debtor. The Debtor's sole asset is a vacant single-family residence located at 54 Sandcastle Lane in Amagansett, New York (the "Property"), which it is in the process of selling for approximately $4.32 million. The Debtor's business relates exclusively to its ownership of the Property; it has no other business operations.

Thomas Zung is the Debtor's sole member, as well as its sole managing member. As I'll discuss later in this decision, the Debtor has a number of insider creditors. Each of those entities is also managed by Mr. Zung, who serves as their managing member.

In December 2021, the Debtor entered into a loan with LendingOne, LLC in the principal amount of $2.4 million. The loan is secured by a first-priority mortgage on the Property. Through a series of assignments, SCL became the holder of the loan

2

and the mortgage.

The Debtor fell into financial distress a few years ago and ceased making payments on this loan. A foreclosure action was commenced in state court in the summer of 2024. The Debtor filed this chapter 11 case in June 2025, thereby staying the foreclosure action.

In January 2026, the Debtor filed its second amended liquidating plan (the "Plan"). The Plan contemplates a sale of the Property followed by distributions to creditors in their order of priority. Those payments will be funded principally, if not entirely, by the sale proceeds. I recently confirmed the Plan, by order dated March 11, 2026.

In February of this year, a virtual bankruptcy auction was held with respect to the Property pursuant to bidding procedures that I had earlier approved. On March 6, 2026, I approved the sale of the Property to the highest bidder for approximately $4.32 million. The sale is expected to close soon.

The great majority of the Debtor's debts are owed either to SCL or to insiders. SCL has asserted a claim in the amount of approximately $3.28 million. Administrative and priority claims are expected to be modest in amount and to consist principally of attorneys' fees and U.S. Trustee fees. The non-insider general unsecured creditor claims are *de minimis*; they appear to total only $7,000. After those claims come the insider general unsecured claims, which total approximately $2.3 million.

The upshot is that the proceeds of the sale will be sufficient to pay all of the Debtor's creditors in full, with the sole exception of the insider creditors, who will receive only partial payment. Debtor's counsel stated at the March 19, 2026 hearing that he estimates that, if SCL's default interest is allowed, the insider class will receive a distribution in the vicinity of $600,000 on account of their claims.

3

In January of this year, the Debtor objected to SCL's claim on a number of grounds. Following an initial round of briefing, I heard argument on the claim objection on February 19, 2026. At the conclusion of that hearing, I ruled on a number of the specific objections that were before me, but I deferred ruling on the objection to default interest and late charges and directed the parties to submit supplemental briefing on those issues. After the completion of that additional briefing, I held a second hearing on March 19, 2026, at which the parties argued the legal issues addressed in their supplemental briefing. I issued my bench ruling the next day.

The record before me on this motion is a purely paper record. The parties have chosen to present no witnesses. The only evidence they have submitted consists of exhibits attached to the various motion papers, plus an affidavit by Debtor's counsel.

### THE LAW GOVERNING CLAIM OBJECTIONS AND POSTPETITION DEFAULT RATE INTEREST

Let me turn now to the governing legal standards, starting with the burden of proof for claim objections. There is no dispute as to these general principles, but it is worth stating them briefly. Section 502(a) of the Bankruptcy Code provides that a filed proof of claim is "deemed allowed, unless a party in interest . . . objects." The case law applying section 502 makes clear that claim objections are subject to a "shifting burden of proof." *In re Genco Shipping & Trading*, 2015 WL 2444152, at *2 (Bankr. S.D.N.Y. 2015). If the claim has been properly filed, it is *prima facie* evidence that the claim is valid. *See* Fed. R. Bankr. P. 3001(f); *see also In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000).

To overcome that *prima facie* presumption, the objecting party must come forward with evidence that, if credited, would refute at least one of the allegations necessary to the claim. *See In re Reilly*, 245 B.R. at 773. If the objector produces evidence at least equal in

4

force to the *prima facie* case, the presumption of validity is overcome, and the burden shifts back to the claimant. The claimant then must prove, by a preponderance of the evidence, that the claim is allowable under applicable law. *See In re Motors Liquidation Co.*, 2013 WL 5549643, at \*3 (S.D.N.Y. 2013); *see also In re Genco*, 2015 WL 2444152, at \*2.

The main issue now before me is the Debtor's objection to SCL's claim for postpetition interest at the contractual default rate. SCL seeks approximately $516,000 of such interest. The Debtor acknowledges that SCL is oversecured, but it argues that, under section 506(b), SCL is not entitled to postpetition default interest.

Section 506(b) of the Bankruptcy Code addresses the entitlements of an oversecured creditor, providing that such a creditor is entitled to interest on its secured claim, plus "any reasonable fees, costs, or charges provided under the agreement." It is settled that section 506(b) authorizes payment of postpetition interest on oversecured prepetition claims, up to the amount by which the creditor is oversecured. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989); *see also In re Residential Capital, LLC*, 508 B.R. 851, 856 (Bankr. S.D.N.Y. 2014). However, section 506(b) does not address the rate of interest at which such postpetition interest should be paid. That issue has been left to the courts to decide.

The parties do not dispute that courts construing section 506(b) have generally applied a rebuttable presumption that an oversecured creditor is entitled to postpetition interest at the contractual default rate. Judge Drain's decision in *In re 53 Stanhope LLC*, 625 B.R. 573 (Bankr. S.D.N.Y. 2021), provides a useful overview of the case law on this issue. Judge Drain's conclusion, after reviewing the case law, was that "[t]here is a presumption . . .—and most cases describe it as a strong presumption—that the 'contract rate' will apply under section 506(b), subject to limited equitable considerations." *Id.* at 579; *see also Urban*

*Communicators PCS Ltd. P'ship v. Gabriel Capital, L.P.*, 394 B.R. 325, 338 (S.D.N.Y. 2008) ("the Court should be loathe to [reduce the interest rate] in the absence of compelling evidence that recognition of a right created by state statute or private agreement would do violence to the principles which constitute the foundation of bankruptcy law") (quoting *In re P.G. Realty Co.*, 220 B.R. 773, 780 (Bankr. E.D.N.Y. 1998)); *In re Residential Capital*, 508 B.R. at 856; *In re Madison 92nd St. Assocs. LLC*, 472 B.R. 189, 198 (Bankr. S.D.N.Y. 2012).

Courts in this Circuit have generally adopted a five-factor test to determine whether a debtor has successfully rebutted this presumption. Those five factors are (i) the solvency of the debtor's estate; (ii) whether the contractual default rate is a penalty; (iii) whether there has been misconduct by the creditor; (iv) whether awarding postpetition interest at the contractual default rate would harm other creditors; and (v) whether allowing such interest would have an adverse effect on the debtor's fresh start. *See In re Stanhope*, 625 B.R. at 580; *see also In re Heavey*, 608 B.R. 341, 352 (Bankr. E.D.N.Y. 2019); *In re 1111 Myrtle Ave. Grp.*, 598 B.R. 729, 736 (Bankr. S.D.N.Y. 2019).

As Judge Drain stated in *In re Stanhope*, "[n]one of these factors is dispositive; allowance is decided on a case-by-case basis." *In re Stanhope*, 625 B.R. at 580. In addition, "[g]iven the importance of predictability with respect to the treatment of secured loans in bankruptcy, [the factors] should be applied 'sparingly' to diverge from the contract rate." *Id*.

Having reviewed the case law applying this five-factor test, I believe some clarification about how courts apply these factors may be helpful. In particular, courts have treated the first factor, whether the debtor is solvent or insolvent, differently than they have treated the four other factors. Specifically, courts have treated the debtor's solvency or

6

insolvency as a threshold consideration, which determines the strength of the presumption in favor of payment at the contractual default rate.

If the debtor is solvent, courts have treated this presumption as very strong, perhaps unrebuttable or close to unrebuttable. *See Urban Communicators,* 394 B.R. at 339; *In re Stanhope*, 625 B.R. at 580; *In re General Growth Properties*, 451 B.R. 323, 328-29 (Bankr. S.D.N.Y. 2011). This rests on a sound rationale. When a debtor is solvent, disallowance of interest at the contractual default rate would benefit only the debtor, and not its creditors. Because the debtor agreed to pay a higher rate of interest following a default, "[r]educing the contract interest payable by a solvent debtor would unfairly grant a windfall to its equity." *In re 785 Partners LLC*, 470 B.R. 126, 134 (Bankr. S.D.N.Y. 2012).

In cases where the debtor is insolvent, courts have taken a different approach. They still have applied a presumption in favor of allowing default rate interest. *See In re Madison*, 472 B.R. at 200 n.7 (because "[m]ost chapter 11 cases involve insolvent debtors," a rule barring default rate interest in such cases "would swallow up the rule that the oversecured creditor is presumptively entitled to the contract rate."). However, courts have done so with a lighter thumb on the scales, disallowing default interest if the debtor can show that at least one of the four equitable considerations—factors 2 through 5 in the five-part test—warrants that result. *See In re Stanhope*, 625 B.R. at 579-80.

### SCL IS ENTITLED TO POSTPETITION DEFAULT RATE INTEREST

Turning to the facts of this case, SCL contends that the Debtor is solvent, but that contention clearly lacks merit. I recently approved a sale of the Property for $4.32 million in cash, and that sale is expected to close soon. The proceeds of that sale will be sufficient to pay all non-insider creditors in full, but insider creditors will be paid only a modest fraction

7

of the claims. The Debtor is therefore insolvent. *See, e.g.*, *In re Latam Airlines Group S.A.*, 643 B.R. 741, 751 (S.D.N.Y. 2022).[2]

As a result, the Debtor can overcome the presumption in favor of awarding default rate interest if, but only if, it can show that one or more of the four relevant factors warrants disallowance. As discussed below, the Debtor has failed to make such a showing.

**A.      SCL's Contractual Default Rate is Not a Penalty**

The first equitable factor (*i.e.*, factor two in the five-factor test) considers whether the default rate operates as an impermissible penalty.

The agreement for SCL's loan provides for a 16 percent default rate, consisting of a 6.99 percent non-default rate plus an additional 9.01 percent upon default. It is undisputed that this rate was negotiated by commercially sophisticated parties, who were represented by capable counsel. Moreover, there is no evidence that the parties intended the default rate to serve as a penalty, rather than as compensation for the increased risk that generally accompanies a borrower's default.

In addition, the agreed interest rate does not violate New York's usury laws. In the first place, those laws do not apply to default interest. *See Urban Communicators*, 394 B.R. at 341 ("[i]t is well established that the usury statutes do not apply to defaulted obligations") (quotation and citation omitted); *accord 72nd Ninth LLC v. 753 Ninth Ave Realty LLC*, 168 A.D.3d 597, 598, 93 N.Y.S.3d 16 (1st Dep't. 2019). And even if it were appropriate to use

---

[2] The fact that only insiders would benefit from the disallowance of default rate interest might warrant requiring the Debtor to make a stronger showing than is usually required in insolvent debtor cases—a showing somewhere between what is usually required in insolvent debtor cases and solvent debtor cases—to overcome the presumption in favor of awarding default rate interest. However, I need not decide this legal issue, because as discussed below, the Debtor has failed to show, even under a regular burden of proof, that any of the four equitable factors warrants disallowance of default rate interest.

New York's usury rates as a benchmark to assess default rates in bankruptcy cases, the usury rate for business loans similar in size to SCL's loan is significantly higher than the default rate for SCL's loan. *See* N.Y. Penal Law § 190.40 (setting 25 percent interest rate cap for business loans between $250,000 and $2.5 million in amount).[3]

These facts, by themselves, may be sufficient to support the conclusion that the default rate for SCL's loan is not an unenforceable penalty. As the Second Circuit held in *Ruskin v. Griffiths*, 269 F.2d 827 (2d Cir. 1959), a default rate is not inherently "a penalty, nor should it be considered unconscionable." *Id.* at 832. To the contrary, a default rate

> can be beneficial to a debtor in that it may enable him to obtain money at a lower rate of interest than he could otherwise obtain it, for if a creditor had to anticipate a possible loss in the value of the loan due to his debtor's bankruptcy or reorganization, he would need to exact a higher uniform interest rate for the full life of the loan.

*Id.* Consistent with these principles, a number of courts have allowed postpetition default interest under section 506(b) based in part on a finding that the default rate did not violate state usury statutes. *See, e.g.*, *Urban Communicators*, 394 B.R. at 341-42 (reversing bankruptcy court and upholding 24 percent default rate, in part because the rate was enforceable under New York's usury statute); *In re Route One West Windsor P'ship*, 225 B.R. 76, 88-90 (Bankr. D.N.J. 1998) (allowing 15 percent default rate under section 506(b) in part because it was enforceable under New York law); *In re Consolidated Operating Partners, L.P.*, 91 B.R. 113, 116 (Bankr. D. Colo. 1988) (allowing 14 percent default rate in

---

[3] The civil usury rate of 16 percent does not apply to businesses. *See* N.Y. General Obligations Law § 5-521(1) ("no corporation shall hereafter interpose the defense of usury in any action"). Consequently, the effective usury rate for corporate borrowers is the 25 percent criminal usury rate, which courts allow companies to use as a defense in civil actions. *See Alleon Capital Partners, LLC v. Choudhry*, 225 A.D.3d 578, 580, 207 N.Y.S.3d 532 (2d Dep't. 2024) ("the defense of usury is not available to corporations," but "this bar does not preclude a corporate borrower from raising the defense of 'criminal usury' (*i.e.*, interest over 25%) in a civil action").

part because it was substantially below applicable state law usury ceiling).

In any event, the default rate for SCL's loan—and in particular, the 9 percent spread between the loan's non-default and default rates—is well within the range of rates that courts in this Circuit have allowed under section 506(b). At least two reported decisions in this District have allowed default rate interest with spreads more than double the 9 percent here. *See Urban Communicators*, 394 B.R. at 337-42 (reversing bankruptcy court and upholding default rate interest with 19 percent spread); *In re Stanhope*, 625 B.R. at 581 (upholding default rate with spread of about 20 percent); *see also In re Heavey*, 608 B.R. at 354 (upholding default rate with 12 percent spread); *In re Liberty Warehouse Assocs. Ltd. P'ship*, 220 B.R. 546, 552 (Bankr. S.D.N.Y. 1998) (upholding default rate with 8.8 percent spread).

For all of these reasons, I find that the contractual default rate in this case is not an unenforceable penalty for purposes of section 506(b). This factor therefore does not warrant the disallowance of default rate interest.

## B.      No Misconduct Is Alleged

The second equitable factor (*i.e.*, factor three in the five-factor test) is whether the creditor engaged in misconduct. *See In re Stanhope*, 625 B.R. at 582-83 (considering allegations of baseless default allegations, misuse of default interest to gain leverage, and obstruction of the restructuring process).

The Debtor has not alleged that SCL has engaged in any misconduct, nor am I aware of any facts in the record suggesting that it has. This factor therefore does not help the Debtor.

## C.      Awarding Default Rate Interest Would Not Cause Any Cognizable Harm to Creditors

The third equitable factor (*i.e.*, factor four in the five-factor test) is generally stated

10

as whether allowing postpetition interest at the contractual default rate would materially harm other creditors.

This formulation can benefit from some clarification. The great majority of chapter 11 debtors are insolvent, and in virtually every such case, allowing a larger claim for one creditor—and therefore paying more to that creditor—harms other creditors for the simple reason that all are recovering from the same limited pot. If harm of this sort were sufficient to overcome the presumption in favor of awarding default rate interest, this would "swallow up the rule that the oversecured creditor is presumptively entitled to the contract rate." *In re Madison*, 472 B.R. at 200 n.7.

Consequently, a better formulation of this factor is that it requires harm to creditors *other than* the dollar-for-dollar reduction in their distributions caused by the increased payment to the secured creditor on account of default rate interest. The case law appears to be generally consistent with this formulation. In *In re Stanhope*, for example, the court focused on whether an award of default interest would put the debtor's reorganization at risk of failure. *See In re Stanhope*, 625 B.R. at 590; *see also In re Residential Capital*, 508 B.R. at 859 (noting that "[w]hile it is easy to conclude that every dollar paid to [the secured creditor] today is one dollar less for unsecured creditors, what is more difficult to say is that this result today is inequitable").

In this case, the Debtor has not argued that an award of default rate interest to SCL would cause any harm to creditors beyond the reduction in distributions to insider creditors directly caused by any increase in the distribution to SCL. (As previously noted, non-insider creditors will be paid in full regardless of the outcome of this issue.) This factor therefore does not support the disallowance of default rate interest.

11

**D.      Awarding Default Rate Interest Would Not Impair the Debtor's Fresh Start**

The final factor is whether allowing postpetition interest at the default rate would impair the Debtor's fresh start. *See In re Stanhope*, 625 B.R. at 590 (considering whether award of default interest would defeat confirmation of debtor's plan of reorganization, thereby jeopardizing the debtor's fresh start).

This factor has no application in this case. The Debtor has no ongoing business to reorganize; instead, the Debtor has filed a plan of liquidation. Moreover, that plan of liquidation has already been confirmed, and an award of default rate interest to SCL will not put the liquidation at risk in any way.

Thus, the Debtor has not shown that any of the four equitable factors warrants disallowance of postpetition interest at the contractual default rate. I will therefore deny the Debtor's motion to the extent it seeks to disallow or reduce such interest.

## SCL IS NOT ENTITLED TO A LATE CHARGE

The Debtor objects to SCL's claim for a late charge, which totals approximately $29,000, on the ground that SCL should not be awarded both default rate interest and a late charge fee. SCL agrees that it is not entitled to both default rate interest and a late charge, but only one or the other. As a court in this District has observed, "[t]he decisional law is uniform that oversecured creditors may receive payment of either default interest or late charges, but not both." *In re 785 Partners*, 470 B.R. at 137 (quoting *In re Vest Associates*, 217 B.R. 696, 701 (Bankr. S.D.N.Y. 1998)); *see also In re 243rd Street Bronx R&R LLC*, 2013 WL 1187859, at *2 (Bankr. S.D.N.Y. 2013) ("both forms of compensation redress the same injury, and an award of both would result in a double recovery").

Because I am allowing SCL's claim for default rate interest, I will disallow

12

the late charge.

## CONCLUSION

For the foregoing reasons, the Court will enter an order allowing SCL's claim for

postpetition default rate interest and disallowing SCL's claim for a late charge.


Signed: New York, NY
    April 4, 2026


/s/ *Philip Bentley*

Hon. Philip Bentley
U.S. Bankruptcy Judge